# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

THOMAS E. BYRD

|                  |     |                                 |
|------------------|-----|---------------------------------|
| **Plaintiff,**   | )   |                                 |
|                  | )   |                                 |
|                  | )   |                                 |
| **vs.**          | )   | Case No.   12-cv-01018-MJR-SCW  |
|                  | )   |                                 |
| **WARDEN GAETZ, C/O FAGERLAND,** | ) |                |
| **C/O BROWN, WARDERN REDNOUR,**  | ) |                |
| **SGT. SCOTT, LT. HUBLER, DR. VIPIN** | ) |           |
| **SHAH and ANGEL RECTOR,**  | )   |                      |
|                  | )   |                                 |
| **Defendants.**  |     |                                 |

## REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

### I.   Introduction

This case is before the Court on motions for summary judgment filed by Defendants Fagerland and Hubler (Doc 53), and Shah and Rector (Doc. 58). Defendant Brown has also joined in the motion for summary judgment filed by Defendants Fagerland and Hubler (Doc. 63 & 68).   The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (c), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a).   It is **RECOMMENDED** that the District Court **ADOPT** the following findings of fact and conclusions of law and **GRANT** the motions for summary judgment filed by Defendants Fagerland, Hubler, Shah, Rector, and Brown (Docs. 53 & 58).

### II.   Findings of Fact

Plaintiff filed his Complaint on September 19, 2012 alleging mistreatment by jail staff constituting both cruel and unusual punishment, and deliberate indifference to his medical needs

against Defendants (Doc. 1).   Specifically, Plaintiff alleges that Defendants Fagerland, Hubler, and Brown retaliated against him for defiance by locking him in a shower for three and a half hours with no food, water, or access to a toilet after making him walk upstairs, shackled, on a foot nagged by ankle screws causing daily swelling, and causing pain enough to qualify him for a low bunk, low gallery permit and to merit treatment with Ibuprofen (Doc. 1).   Plaintiff also alleges that Defendants Shah's and Rector's failure to adequately address his ankle pain arising from the screws constitutes deliberate indifference to his medical needs (Doc 1).

On March 18, 2013, Defendants Fagerland and Hubler filed a motion for summary judgment arguing that Plaintiff failed to exhaust his administrative remedies (Doc. 55).   Shortly thereafter, on April 1, 2013, Defendant Brown moved to join in Defendants Fagerland's and Hubler's motion (Doc. 63).   The Court granted Defendant Brown's motion (Doc. 68).   On March 18, 2013, Defendants Shah and Rector also filed a motion for summary judgment for failure to exhaust (Doc. 58).

Plaintiff has filed a Response in opposition to both motions for summary judgment (Doc. 61).   Plaintiff attaches various documents relating to administrative grievance procedures at Pinckneyville Correctional Center (Doc. 61 Exs. 1A-E, 1I-J), notably two procedurally final determinations dated October 18, 2012 (Doc. 61 Ex. 1B) and October 30, 2012 (Doc. 61 Ex. 1A) that settle the staff misconduct grievance, and deliberate indifference to medical needs grievance, respectively.

While Plaintiff's filings do constitute a conclusive record of the administrative procedural history of his grievances, Plaintiff's Response is complicated by assertions inconsistent with the attachments he refers to.   He asserts that Ex. 1C (Doc. 61) demonstrates that his medical grievance was settled with finality on July 2, 2012, and while this attachment is correspondence from

the Administrative Review Board ("ARB")—the body that issues final decisions about prisoner grievances with concurrence from the Director—the letter was not a decision, but rather notice of procedural defect in Plaintiff's medical grievance and an invitation to re-file.   Plaintiff's Ex. 1A, dated October 30, 2012, does squarely address any question of fact that might arise from this inconsistency, conclusively demonstrating that the ARB settled Plaintiff's medical grievance, denying it.   Plaintiff's medical grievance properly reached administrative finality October 30, 2012.   Plaintiff's filings alone substantiate this, and Defendants do not dispute it.

Similarly, Plaintiff alleges in his Response (Doc. 61) that attached Exs. 1I and 1J demonstrate that he exhausted his administrative remedies with respect to his staff misconduct grievance sometime in June 2012.   It is true that both of these attachments bear dates in June 2012, but rather than being a final decision recommended by the ARB with concurrence from the Director, these documents are initial grievance reports.   They simply are not what Plaintiff says they are, and they do not indicate administrative procedural finality.

Despite his assertions of reaching final administrative decisions during June and July 2012, Plaintiff's own filings conclusively show that his grievances have reached administrative finality but that they did so in October, 2012:   the staff misconduct grievance on October 18, and the medical grievance on October 30 (Doc. 61 Exs. 1A, 1B).   Defendants do not contest these dates, but rather agree (*See* Doc. 59, ¶ 15 (stating that Pl.'s medical grievance was exhausted on October 30, 2012); Doc. 56, ¶ 25 (stating that Pl.'s staff misconduct grievance was exhausted on October 18, 2012).   Thus a review of the filings shows that there are no disputes of fact over exhaustion.

Because the undersigned has determined that there are no disputes of fact over exhaustion, the Court finds that a *Pavey* hearing is not necessary since the issues presented are solely legal questions.

### III.    Conclusions of Law

Summary Judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010).

**A.    Exhaustion Requirements under the PLRA**

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA").  **42 U.S.C. §1997e(a).**  The PLRA states that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted.*" *Id.* **(emphasis added).**  Under **42 U.S.C. §1997e(a)**, a prisoner must exhaust his administrative remedies before he can file suit.  *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).   A prisoner cannot "file a lawsuit before exhausting his administrative remedies even if he exhausts those remedies while the litigation is pending."  *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005) (citing *Perez v. Wis. Dep't of Corr.*, 182. F.3d 532, 535 (7th Cir. 1999)).   Putting things precisely, *Perez* holds that "[t]he actual statute [§ **1997e(a)**] makes exhaustion *a precondition to suit.*" **182 F.3d at 535 (emphasis added).**

A prisoner can exhaust his administrative remedies only by following the prison's administrative rules closely.  *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) **(holding that "to exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.");** *Burrell v. Powers,* 431 F.3d 282, 285 (7th Cir. **2006)(failure to take timely appeal in state grievance process is a failure to exhaust).**  Failure to do so could leave an inmate's grievance with a procedural flaw that gives prison authorities grounds to refuse to hear it, rendering the administrative determination practically final, but leaving the

grievance in the procedural limbo of being "indefinitely unexhausted". *Dole v. Chandler* **438 F.3d 804, 809 (7th Cir. 2006).** Exhaustion is not practical finality. Further, the PLRA's exhaustion requirement is comprehensive, extending even to grievances in which a prisoner seeks a remedy the grievance procedures do not provide. *Booth v. Churner***, 532 U.S. 731, 741 (2001).**

"Exhaustion" under the PLRA means carrying administrative grievances through to the very end, and any procedural history that falls short of this—despite the practical but not procedural finality of a grievance—does not demonstrate exhaustion. *Pozo***, 286 F.3d at 1024 (holding that the term 'exhaustion' "means using all steps that the agency holds out, and doing so** *properly***"). See also** *Woodford v. Ngo***, 548 U.S. 81, 90 (2006) (affirming the** *Pozo* **exhaustion doctrine)**.

Thus the law is clear. In order to file a suit in federal court over prison conditions, a prisoner must first exhaust the available administrative remedies. This means taking a grievance to its procedural end while meeting deadlines and filing grievances correctly, and following the procedural requirements of prison administration authorities strictly even if the grievance process cannot grant the relief a prisoner seeks. Exhaustion is a necessary condition to bringing an action in federal court for any inmate raising a controversy about prison conditions, as understood above. No inmate can bring a suit alleging wrongs suffered in prison unless he has taken his grievance to its procedural endpoint.

### 1.   *Pavey* Procedures

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley***, 544 F.3d 739, 740-41(7th Cir. 2008).** Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate.   (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over.   (3)If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.   Although the court in *Pavey* included a hearing as one of the steps in determining whether the plaintiff had satisfied the exhaustion requirement, "there is no reason to conduct an evidentiary hearing" in a "situation [where] there are no disputed facts regarding exhaustion, only a legal question."   *Doss v. Gilkey*, 649 F.Supp.2d 905, 912 (S.D.Ill. 2009) (Gilbert, Phil J.).

**B.**     **Exhaustion Requirements Under Illinois Law**

Inmates confined within the Illinois Department of Corrections are required to follow the regulations set forth in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust their claims.   **20 Ill. Administrative Code §504.800 *et seq.*** The grievance procedures first require inmates to speak with the counselor about their complaint.   **20 Ill. Admin. Code §504.810(a).**   Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident.

*Id.*   The grievance form must:

contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint.   The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender

must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).** "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer...[who]shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code §504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code §504.850(a).** "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code §504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code §504.850(f).**

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code §504.840(a).** If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the

grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance.    **20 Ill. Admin. Code §504.840(b).**   Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis.   **20 Ill. Admin. Code §504.850(g).**

## C.    Analysis

All of the Defendants argue that they are entitled to summary judgment on Plaintiff's several § 1983 claims because he filed suit on September 19, 2012, before reaching administrative procedural finality on either October 18, 2012 or October 30, 2012, for the staff misconduct claims and deliberate indifference claims, respectively.

### 1.    Staff Misconduct

Defendants Fagerland, Hubler, and Brown argue that Plaintiff failed to exhaust his administrative remedies against them prior to filing suit on his claim that he was subjected to cruel and unusual punishment when he was locked in the shower for a period of several hours without food, water, or access to a toilet.   Plaintiff's own uncontested filings demonstrate that the ARB reached a final determination with concurrence of the Director on the related grievance on Oct. 18, 2012 (Doc. 61, Ex. 1B).   Accordingly, because Plaintiff filed suit on September 19, 2012 (Doc. 1), but the related grievance reached a final determination nearly one month later, the undersigned **FINDS** that Plaintiff failed to exhaust his administrative remedies for this claim prior to bringing suit.

### 2.    Deliberate Indifference to Plaintiff's Medical Needs

Defendants Shah and Rector argue that Plaintiff failed to exhaust his administrative remedies against them prior to filing suit on his claim that by failing to address his ankle screws and related pain and swelling adequately, they were deliberately indifferent to his medical needs. Plaintiff's own uncontested filings demonstrate that the ARB reached a final determination with

concurrence of the Director on the related grievance on Oct. 30, 2012 (Doc. 61, Ex. 1A). Accordingly, because Plaintiff filed suit on September 19, 2012, but the related grievance reached a final determination over one month later, the undersigned **FINDS** that Plaintiff failed to exhaust his administrative remedies for this claim prior to bringing suit.

### 3.       Common Dispositive Considerations of Law

Exhaustion of administrative remedies is a precondition to filing suit.   *Perez* **182 F.3d at 535.** An inmate cannot file suit first, then reach administrative exhaustion second.   *Cannon* **418 F.3d at 719.**   Yet this is exactly the situation before the court:   Plaintiff simply filed suit before he exhausted his administrative remedies.   Thus the suit must be dismissed.   Plaintiff has submitted evidence that he has successfully exhausted his administrative remedies, but this fact is not what the instant case turns on.   The case turns on the fact that Plaintiff filed first and exhausted second, and the law is clear that this is something he cannot do.   The suit is not properly before this Court and thus must be dismissed.

## IV.   Conclusions

Accordingly, the undersigned **RECOMMENDS** that the Court **FIND** that Plaintiff failed to exhaust his administrative remedies before filing suit as to both claims against all defendants.   Thus, it is **RECOMMENDED** that the Court **GRANT** the motion for summary judgment as to Defendants Fagerland, Hubler, and Brown (Doc. 55, 63 & 68), and **GRANT** the motion for summary judgment as to Defendants Shah and Rector (Doc. 58).   The cruel and unusual punishment claim shall be **DISMISSED without prejudice** as to Defendants Fagerland, Hubler, and Brown, and the deliberate indifference to medical needs claim shall be **DISMISSED without prejudice** as to Defendants Shah and Rector.

Should the Court adopt the Report and Recommendation, there will be no further

claims pending in this case.

Pursuant to **28 U.S.C. § 636(b)(1)** and **Local Rule 73.1(b),** the parties may object to any or all of the proposed dispositive findings in this Recommendation.   The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals**.   *See, e.g., Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004).**   Accordingly, Objections to this Report and Recommendation must be filed on or before **November 1, 2013.**

**IT IS SO ORDERED**.
DATED: October 15, 2013.

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge